IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| AMCO INSURANCE COMPANY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 1:24-cv-00508-LMM |
| ZYKERIA NOTTINGHAM; GARDENS AT WASHINGTON PARK 1, LLC; BALFOUR RESIDENTIAL, LLC; and GINA RIVERA, | : : : : : : | |
| Defendants. | : | |

## **ORDER**

This case comes before the Court on Plaintiff AMCO Insurance Company's Motions for Summary Judgment [62, 63] and Defendants Gardens at Washington Park 1, LLC and Balfour Residential, LLC's Motion for Summary Judgment [65]. After due consideration, the Court enters the following Order.

**I.     BACKGROUND**

This case involves a dispute over insurance coverage and whether the insured complied with the notice provisions of the insurance policy. Plaintiff AMCO Insurance Company seeks a declaratory judgment regarding an underlying lawsuit filed by Defendant Zykeria Nottingham against Defendants Gardens at Washington Park 1, LLC, Balfour Residential, LLC (collectively "the

Gardens Defendants"), and Gina Rivera. Dkt. No. [6]. Plaintiff issued two commercial insurance policies to the Gardens Defendants for their apartment complex, the Gardens at Washington Park: (A) the Businessowner's policy; and (B) the Umbrella Policy. Dkt. No. [63-2] ¶ 1. As a condition, the Businessowner's policy ("the Policy") included the following language requiring the Gardens Defendants to notify Plaintiff of any potential claims:

> a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:
>
> > (1) How, when and where the "occurrence" or offense took place;
> > (2) The names and addresses of any injured persons and witnesses; and
> > (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

Dkt. No. [65-2] ¶ 7 (citing Dkt. No. [6-1] at 25).

On October 31, 2022, Defendant Nottingham was shot while inside a unit on the Gardens Defendants' premises. Dkt. No. [63-2] ¶ 24. The Gardens Defendants learned of the shooting around six hours after it occurred when Defendant Nottingham's father reported the incident to a leasing agent for the Gardens Defendants. Id. ¶ 27. For eleven months, the Gardens Defendants did not notify Plaintiff of this incident. Id. ¶ 35. But on September 27, 2023, Defendant Nottingham's attorney sent a letter to the Gardens Defendants informing them to notify their insurance carrier of the shooting and requesting that the Gardens Defendants preserve any evidence related to the shooting. Dkt. No. [65-2] ¶ 8 (citing Dkt. No. [66-1] at 8). The next day, the Gardens Defendants

notified Plaintiff of the shooting. Dkt. No. [63-2] ¶¶ 35–36. On March 22, 2024, Defendant Nottingham—plaintiff in the underlying action—sued the Gardens Defendants in the Superior Court of Fulton County alleging that the Gardens Defendants breached their duty to keep the premises safe for their tenants and invitees.[1] Id. ¶ 53. After receiving notice of the suit, Plaintiff agreed to provide a defense to the Gardens Defendants under a reservation of rights. Id. ¶ 54.

Shortly after Defendant Nottingham brought the underlying suit, Plaintiff brought this declaratory judgment action against the Gardens Defendants, Gina Rivera, and Defendant Nottingham, seeking a declaration that the Gardens Defendants breached its duty to timely notify Plaintiff of the shooting. Dkt. No. [6] ¶¶ 38–42. Defendant Nottingham filed a counterclaim complaint seeking 1) declaratory relief that Plaintiff is obligated to provide insurance coverage to the Gardens Defendants and (2) attorneys' fees. Dkt. No. [9] ¶¶ 19–28. Plaintiff now moves for summary judgment against both the Gardens Defendants and Defendant Nottingham, arguing that it does not have a duty to defend the Gardens Defendants because Plaintiff did not receive timely notice of the shooting. Dkt. Nos. [62, 63]. The Gardens Defendants also seek summary judgment, arguing that they provided Plaintiff with timely notice and thus Plaintiff is required to provide coverage under the Policy. Dkt. No. [65].

---

[1] The underlying action filed by Defendant Nottingham is styled as *Zykeria Nottingham v. Gardens at Washington Park 1, LLC, et al.*, Civil Action No. 24CV003681 in the Superior Court of Fulton County.

**II.     LEGAL STANDARD**

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if the evidence would allow a reasonable jury to find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (citations omitted).

The moving party bears the initial burden of showing the Court, by reference to materials in the record, that there is no genuine dispute as to any material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party discharges its burden by merely "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support [an essential element of] the nonmoving party's case." Celotex Corp., 477 U.S. at 325. In determining whether the moving party has met this burden, the district court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. Johnson v. Clifton, 74 F.3d 1087, 1090 (11th Cir. 1996).

Once the moving party has adequately supported its motion, the non-movant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). If the record as a whole could not lead a rational trier of fact to find for the nonmoving party, then there is no genuine dispute for trial. Id. (citations omitted). All reasonable doubts, however, are resolved in favor of the non-movant. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993) (citation omitted).

The same standard of review applies to cross-motions for summary judgment, but the Court must determine whether any of the parties deserves judgment as a matter of law on the undisputed facts. S. Pilot Ins. Co. v. CECS, Inc., 52 F. Supp. 3d 1240, 1242–43 (N.D. Ga. 2014) (citing Am. Bankers Ins. Grp. v. United States, 408 F.3d 1328, 1331 (11th Cir. 2005)). Each motion must be considered "on its own merits, [with] all reasonable inferences [resolved] against the party whose motion is under consideration." Id. at 1243.

**III.   DISCUSSION**

Plaintiff moves for summary judgment against the Gardens Defendants, arguing that it has no duty to defend the Gardens Defendants in the underlying lawsuit. See Dkt. No. [63]. Plaintiff contends that the Gardens Defendants violated the timely notice provision by informing Plaintiff of the shooting eleven months after it occurred. Dkt. No. [63-1] at 14–25. And because the notice

provision is a condition precedent to coverage, Plaintiff argues that the Gardens Defendants do not have a right to coverage under the policy. Id.

The Gardens Defendants disagree and file their own Motion for Summary Judgment, contending that Plaintiff has a duty to defend them in the underlying state court action. See Dkt. No. [65] In particular, the Gardens Defendants raise the following arguments in support of its Motion: (A) Plaintiff's duty-to-defend argument may only rely on a comparison of the Policy and the underlying complaint, not extraneous information; (B) Plaintiff failed to produce evidence that it was prejudiced by the allegedly untimely notice; and (C) the Gardens Defendants' delay in providing notice was reasonable. Dkt. Nos. [65-1, 71]. Plaintiff opposes each argument, Dkt. No. [67, 73] and the Court addresses each of them below. Additionally, Plaintiff moved for summary judgment on Defendant Nottingham's counterclaims, Dkt. No. [62], and the Court also addresses the parties' arguments regarding that motion below.

### A. Extraneous Information

First, the Gardens Defendants argue that Plaintiff's duty-to-defend argument fails because it relies on facts extraneous to the eight corners of the underlying complaint and the Policy. Dkt. No. [71] at 5; Dkt. No. [65-1] at 8–11. As stated previously, Plaintiff argues that it does not owe any coverage under the Policy because the Gardens Defendants provided untimely notice of the shooting. Dkt. No. [63-1] at 14–25. In support, Plaintiff points to the Gardens Defendants' conduct including when the Gardens Defendants notified Plaintiff about the

shooting, whether they were aware a claim would arise, and why they delayed providing notice. Id. at 18–25. The Gardens Defendants argue that, when examining whether an insurer has a duty to defend, the Court may only examine the facts of the underlying complaint and the relevant policy language, not the Gardens Defendants' conduct surrounding their delay in notice. Dkt. No. [65-1] at 8–11. Plaintiff disagrees, pointing to case law where courts have examined evidence beyond the allegations of the complaint and the policy to determine whether the insurer has a duty to defend. Dkt. No. [73] at 4–5.

The Court agrees with Plaintiff. Plaintiff's duty-to-defend argument stems from the Gardens Defendants' alleged failure to comply with the notice provision of the Policy, and when analyzing this issue, courts routinely examine facts outside of the underlying complaint and the insurance policy. For example, in Allstate Ins. Co. v. Airport Mini Mall, LLC, 265 F. Supp. 3d 1356, 1365–66 (N.D. Ga. 2017)—a case which the Gardens Defendants rely on—the court first determined whether a specific kind of liability was covered by the insurance policy. For that inquiry, the court examined "the allegations of the complaint in conjunction with the relevant policy language to determine whether a liability covered by the policy is asserted.'" Id. at 1366. (citation modified). After that, the court conducted a separate analysis to determine whether the insured complied with the policy's notice provision. Id. at 1376–83. In that inquiry, the court considered the severity of any injuries or damages, whether anyone gave an

indication that the insured would be held responsible for the injuries, and generally whether the insured's delay in providing notice was reasonable. Id.

The Gardens Defendants appear to confuse these two inquiries. The first inquiry examines whether a specific occurrence, liability, or injury falls within the scope of the policy, and this analysis inherently relies on what kind of injury is alleged in the underlying lawsuit. The second inquiry—presented here—does not turn on Defendant Nottingham's injuries in the underlying lawsuit but rather on the insured's compliance with a notice provision. This analysis certainly requires the Court to consider the insured's conduct which includes facts extraneous to the underlying complaint and the Policy. In similar situations, courts often examine the insured's conduct to determine whether they complied with a notice provision. See e.g., Advocate Networks, LLC v. Hartford Fire Ins. Co., 674 S.E.2d 617, 619 (Ga. Ct. App. 2009) (explaining that the court "looks to the reasons provided by the insured for any delay" for determining compliance with the notice provision); Nationwide Prop. & Cas. Ins. Co. v. Renaissance Bliss, LLC, 396 F. Supp. 3d 1287, 1295–97 (N.D. Ga. 2019) (considering the insured's actions to determine whether it complied with the notice provision of the policy); Owners Ins. Co. v. Hawkins, No. 1:22-CV-01265-JPB, 2023 WL 5733838, at *6–8 (N.D. Ga. Sept. 1, 2023) (finding no duty to defend after analyzing the insured's actions and determining that it failed to provide timely notice). Thus, based on Georgia case law examining an insured's compliance with a notice provision, the Court disagrees with the Gardens Defendants and holds that Plaintiff's argument

regarding the duty-to-defend inquiry is not limited to facts of the underlying complaint and the Policy.

### B. Prejudice

Second, the Gardens Defendants argue that Plaintiff failed to demonstrate that it was prejudiced by the allegedly untimely notice. Dkt. No. [71] at 5–9. The Gardens Defendants contend that, because the notice provision of the Policy is not expressly a condition precedent to coverage, then Georgia law requires Plaintiff to demonstrate it was prejudiced by the delay in notice. Id. at 6–7. And because Plaintiff has not offered sufficient evidence of prejudice, the Gardens Defendants contend that Plaintiff may not deny coverage. Id. at 7–9. In response, Plaintiff contends that the notice provision here is a condition precedent to coverage, and in the alternative, Plaintiff argues that prejudice can be presumed by the extensive length of the Gardens Defendants' delay in providing notice. Dkt. No. [73] at 2–6.

The Court agrees with Plaintiff and finds that the notice provision here is a condition precedent to coverage. "[W]here a notice provision is *not* expressly made a condition to precedent to coverage of the insurance contract, an insured's failure to comply with the notice provision will result in a forfeiture of coverage only if the insurer demonstrates that it was prejudiced by the insured's failure." Plantation Pipe Line Co v. Stonewall Ins. Co., 780 S.E.2d 501, 510 (Ga. Ct. App. 2015). "The general rule is that a notice provision in an insurance policy is only considered a condition precedent to coverage if it expressly states that a failure to

provide such notice will result in a forfeiture of the insured's rights or uses language which otherwise clearly expresses the intention that the notice provision be treated as a condition precedent." Progressive Mountain Ins. Co. v. Bishop, 790 S.E.2d 91, 94 (Ga. Ct. App. 2016) (citation modified). Here, the Policy's notice provision stated the following:

> a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:
>
>> (1) How, when and where the "occurrence" or offense took place;
>> (2) The names and addresses of any injured persons and witnesses; and
>> (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

Dkt. No. [6-1] at 25. The Gardens Defendants argue that this notice provision is not a condition precedent because it does not expressly state that failure to provide notice will result in forfeiture of its right to coverage. Dkt. No. [65-1] at 11–12 (citing Plantation Pipe Line Co., 780 S.E.2d at 510).

The Court disagrees, because Georgia courts have held that notice provisions using identical language are conditions precedent to coverage. See Forshee v. Emps. Mut. Cas. Co., 711 S.E.2d 28, 30–31 (Ga. Ct. App. 2011) (finding that a notice provision stating that "you must see to it" without more, was a condition precedent); Mt. Hawley Ins. Co. v. E. Perimeter Pointe Apartments, 861 F. App'x 270, 277 (11th Cir. 2021) (applying Georgia law and finding that a notice provision requiring the insured to notify the insurer "as soon as practicable" was a condition precedent to coverage); Airport Mini Mall, LLC, 265 F. Supp. 3d at

10

1377 (holding that language identical to the Policy here was a condition precedent to coverage). Additionally, the Eleventh Circuit applying Georgia law found that a notice provision appearing in a section of the policy titled "General Conditions" and a subsection titled "Duties in the Event of . . . Claim or Suit" demonstrated "the intention that the notice provisions be treated as conditions precedent to coverage." State Farm Fire & Cas. Co. v. LeBlanc, 494 F. App'x 17, 21 (11th Cir. 2012). Because the Policy's notice provision here also appeared in a section titled "Commercial General Liability Conditions" and a subsection entitled "Duties In The Event Of Occurrence, Offense, Claim or Suit," the Court similarly finds that the notice provision here is a condition that would result in forfeiture of the insured's rights if not complied with. Dkt. No. [6-1] at 25.

Therefore, based on the language of the notice provision and its location within the Policy, the Court disagrees with the Gardens Defendants and holds that the notice provision here is a condition precedent to coverage. Thus, Plaintiff is not required to demonstrate that it was prejudiced by the late notice, and the Gardens Defendants' prejudice argument fails.

### C. Timeliness of Notice

Plaintiff's Motion for Summary Judgment argues that the Gardens Defendants violated the notice provision when they did not provide notice of the shooting for eleven months. Dkt. No. [63-1] at 15–25. In response, the Gardens Defendants disagree, contending that their delay in providing notice was reasonable as a matter of law. Dkt. No. [65-1] at 14–18. In the alternative, the

11

Gardens Defendants argue that the reasonableness of their delay is a question of fact for a jury. Dkt. No. [71] at 9–19. For the reasons below, the Court agrees with the Gardens Defendants that this issue should be decided by a factfinder.

Here, the Policy required the Gardens Defendants to notify Plaintiff "as soon as practicable of an 'occurrence' or an offense which may result in a claim." Dkt. No. [6-1] at 25. Under Georgia law, "as soon as practicable" has been interpreted to have the same meaning as "prompt" or "immediate." See LeBlanc, 494 F. App'x at 22 (applying Georgia law). Because the Gardens Defendants did not notify Plaintiff about the shooting until eleven months after it occurred, Plaintiff contends that the notice was not "as soon as practicable." Dkt. No. [63-1] at 20–24. Specifically, Plaintiff points to cases where four-to-eight-month delays were found to be untimely and unreasonable as a matter of law. Id. at 20–21. In response, the Gardens Defendants contend that, rather than just examining the length of the delay, the Court must examine whether the delay was reasonable which is typically an issue for a jury. Dkt. No. [65-1] at 14–15; Dkt. No. [71] at 9–12.

"In cases in which a policy's notice provision gives no specific time frame, there is no bright-line rule on how much delay is too much." Progressive Mountain Ins. Co., 790 S.E.2d at 95; see Vintage Hosp. Grp. LLC v. National Trust Ins. Co., 565 F. Supp. 3d 1365, 1369–70 (M.D. Ga. 2021) (holding that only considering the length of the delay "without considering the surrounding circumstances . . . would rewrite the 'reasonableness' and 'practicable' elements

12

out of the rule and reduce the requirement to an arbitrary one tied solely to 'length of delay'"). "An insured may be able to present a justification for delay in giving notice, and whether that justification was sufficient is generally a fact-based inquiry for a jury." Progressive Mountain Ins. Co., 790 S.E.2d at 95 (citing Plantation Pipe Line Co., 780 S.E.2d at 506). "Nevertheless, the facts and circumstances of a particular case may render an insured's delay in giving notice of an occurrence to his insurer unjustified and unreasonable as a matter of law." Plantation Pipe Line Co., 780 S.E.2d at 506 (citation omitted).

Whether an insured's delay is justified depends on whether the insured acted "reasonably under the circumstances." Forshee, 711 S.E.2d at 31 (quoting Guar. Nat'l Ins. Co. v. Brock 474 S.E.2d 46, 48 (Ga. Ct. App. 1996)). "[I]f a reasonable and ordinarily prudent person would conclude that an event forms no basis for a possible claim, the failure of the insured to give notice of the event is justified and no bar to coverage." Forshee, 711 S.E.2d at 31. Additionally, courts consider whether "the insured actually knew or should have known of the possibility that it might be held liable for the offense in question." Airport Mini Mall, LLC, 265 F. Supp. 3d at 1379 (citing Forshee, 711 S.E.2d at 31).

The Gardens Defendants argue that their delay was reasonable and first rely on the testimony of Mr. Shmuel Wolf, their corporate representative. Dkt. No. [65-1] at 15–17. According to Wolf, when notifying the Gardens Defendants' insurers about incidents on the premises, he testified that his standard practice was to "wait for a formal demand from any individual claiming to be injured" on

13

the premises. Id. at 15 (citing Dkt. No. [66] ¶ 6). Following that practice, the Gardens Defendants informed Plaintiff of the shooting one day after it received the first letter from Defendant Nottingham's counsel. Dkt. No. [63-2] ¶¶ 35–36. Additionally, the Gardens Defendants note that none of its agents or employees were directly responsible for the shooting; instead, they point out that the shooting was done by a third-party perpetrator. Dkt. No. [71] at 14. The Gardens Defendants also contend there is no evidence that Defendant Nottingham sought to hold the Gardens Defendants accountable, especially where the incident report for the shooting stated that Defendant Nottingham did not intend to seek compensation from the Gardens Defendants for her injuries. Id. at 15. Lastly, they rely on Wolf's subjective belief that the Gardens Defendants would not be held liable for Defendant Nottingham's injuries. Dkt. No. [65-1] at 17.

In response, Plaintiff first notes that the Gardens Defendants' subjective assessment of their liability is immaterial as to whether their delay was reasonable. Dkt. No. [73] at 12. Next, Plaintiff points to Wolf's testimony where he acknowledged that a lawsuit might be filed anytime someone is injured at a property. Id. at 14. And unlike a minor slip and fall where the injuries were not immediately apparent, Plaintiff notes that this shooting left Defendant Nottingham in critical condition and that the Gardens Defendants were aware of the extent of her injuries. Id. Lastly, Plaintiff points to the Gardens Defendants' experience dealing with similar premises liability incidents and argues that,

14

based on this experience, they had actual knowledge that a shooting such as this one may result in a claim. Dkt. No. [67] at 16–17.

Based on the record evidence, the Court finds that a genuine factual dispute exists as to whether the Gardens Defendants' delay was reasonable. First, the Court finds that the incident report indicated that Defendant Nottingham did not intend to seek compensation or hold the Gardens Defendants liable for her injuries. See Forshee, 711 S.E.2d at 31–32 (considering whether anyone gave "any indication that [the injured party] intended to hold the insured responsible for the event and resulting injuries"). Second, the nature of the incident demonstrates that the shooting was due to the actions of a perpetrator, rather than the Gardens Defendants or one of its agents. See e.g., Owners Ins. Co. v. Lopez, Case No. 4:14-cv-290 (CDL), 2015 WL 5440818, at *3 (M.D. Ga. Sept. 15, 2015). The Court finds that this factors into the reasonableness of the Gardens Defendants' belief that they would not be held liable, especially where there was no obvious tort or act of negligence by the Gardens Defendants that led to Defendant Nottingham's injuries. Third, unlike other cases where courts found that a delay was unreasonable as a matter of law, the Court here holds that the Gardens Defendants present more evidence than just a subjective assessment of their liability. Cf. Hawkins, 2023 WL 5733838, at *7–8 (finding that a delay in notifying the insurer about a shooting was unreasonable where the insured only relied on its unilateral assessment of liability). Ultimately, the Court finds that the record evidence creates a dispute of fact as to the reasonableness of the

Gardens Defendants' actions and demonstrates that the delay was not due to "ignorance, or even misplaced confidence." Protective Ins. Co. v. Johnson, 352 S.E.2d 760, 761 (Ga. 1987). Therefore, this issue is properly reserved for a jury to decide at trial.

In conclusion, the Court disagrees with Plaintiff that the delay was unreasonable as a matter of law. Georgia precedent requires the court to examine whether the insured acted reasonably under all the circumstances. Here, the Court finds that there is a sufficient factual issue for a jury to determine whether the Gardens Defendants reasonably delayed providing notice. Thus, because the Court finds a genuine dispute of fact, the Court holds that summary judgment is not appropriate for either Plaintiff or the Gardens Defendants.

### D.     Defendant Nottingham's Counterclaims

Lastly, Plaintiff also moved for summary judgment on Defendant Nottingham's counterclaims. Dkt. No. [62]. Defendant Nottingham asserts two counterclaims: (1) a declaratory judgment claim regarding Plaintiff's duty to defend, and (2) a claim for attorneys' fees. See Dkt. No. [9]. Because the Court finds that there is a genuine dispute of material fact barring summary judgment on Plaintiff's declaratory judgment action, the Court also finds the summary judgment is not proper for Defendant Nottingham's declaratory judgment counterclaim. But for the attorneys' fees claim, Plaintiff argues that this claim should be dismissed, because its pre-litigation conduct was not (1) in bad faith, (2) stubbornly litigious, or (3) causing unnecessary trouble and expense. Dkt. No.

16

[62-1] at 5–6. In response, Defendant Nottingham argues that the issue of attorneys' fees is a jury question, especially where there is no bona fide controversy or dispute as to liability. Dkt. No. [69] at 10–12.

Under Georgia law, attorneys' fees may be awarded where the opposing party has acted in bad faith, has been stubbornly litigious, or has caused unnecessary trouble and expense. See O.C.G.A. § 13-6-11. Importantly, a basis for attorneys' fees "must be found in the 'conduct arising from the transaction underlying the cause of action being litigated, not conduct during the course of the litigation itself.'" Alston & Bird, LLP v. Hatcher Mgmt. Holdings, LLC, 862 S.E.2d 295, 302 (Ga. 2021) (citing David G. Brown, P.E., Inc. v. Kent, 561 S.E.2d 89, 90 (Ga. 2002)).

The Court finds that Defendant Nottingham's attorneys' fees claim is subject to dismissal. First, the Court does not find any evidence of bad faith. The only pre-litigation conduct that Defendant Nottingham points to is Plaintiff's denial of coverage under a reservation of rights. Dkt. No. [69] at 11–12. To find that bad faith would support an award of attorneys' fees, the offensive conduct must have been "more than bad judgment or negligence." Powell Co. v. McGarey Grp., LLC, 508 F. Supp. 2d 1202, 1219 (N.D. Ga. 2007); see also Lexmark Carpet Mills, Inc. v. Color Concepts, Inc., 583 S.E.2d 458, 461 (Ga. Ct. App. 2003) (requiring a "sinister motive" to find bad faith). As Plaintiff points out, a denial of coverage under a reservation of rights is an advised procedure for handling coverage disputes under Georgia law. Dkt. No. [74] at 4. Thus, this is insufficient

evidence of a dishonest purpose, and the Court holds that Plaintiff's conduct does not warrant a finding of bad faith.

Second, the Court also does not find sufficient evidence that Plaintiff was stubbornly litigious or has caused unnecessary trouble or expense. Where, as here, "the basis for a recovery of attorney fees is either stubborn litigiousness or the causing of unnecessary trouble and expense an award under O.C.G.A. § 13-6-11 is authorized where the evidence reveals that no bona fide controversy or genuine dispute existed—whether of law or fact, on liability or amount of damages, or on any comparable issue." Wilson v. Redmond Constr., Inc., 860 S.E.2d 118, 123 (Ga. Ct. App. 2021) (citation modified). Georgia courts "have . . . repeatedly held that, if a bona fide controversy clearly exists between the parties, there is not 'any evidence' to support an award based on stubborn litigiousness." Horton v. Dennis, 750 S.E.2d 493, 497 (Ga. Ct. App. 2013).

Here, because there is factual dispute as to whether Plaintiff has a duty to defend the Gardens Defendants, the Court finds that there is a bona fide controversy regarding insurance coverage. Thus, Defendant Nottingham's claim for attorneys' fees cannot be based on Plaintiff being stubbornly litigious or causing unnecessary trouble and expense.

Therefore, because Defendant Nottingham does not establish a sufficient basis for attorneys' fees under O.C.G.A. § 13-6-11, the Court finds that Plaintiff is entitled to summary judgment on Defendant Nottingham's claim for attorneys' fees.

## IV.     CONCLUSION

Based upon the foregoing, Plaintiff's Motion for Summary Judgment against Defendant Zykeria Nottingham [62] is **GRANTED in part and DENIED in part**; Defendant Nottingham's claim for attorneys' fees is dismissed, but her declaratory judgment claim remains. Additionally, Plaintiff's Motion for Summary Judgment against the Gardens Defendants [63] is **DENIED**, and the Gardens Defendants' Motion for Summary Judgment [65] is **DENIED**. The parties are **DIRECTED** to submit their proposed pre-trial order within 30 days of the date of this Order.

**IT IS SO ORDERED** this 7th day of August, 2025.

**Leigh Martin May**
**United States District Judge**